**FILED**

MAR 2 3 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | **05C 1711** |
| | ) | |
| v. | ) | |
| | ) | **JUDGE COAR** |
| COUNTY OF McHENRY | ) | |
| | ) | |
| Defendant. | ) | **MAGISTRATE JUDGE SCHENKIER** |

### PETITION TO COMPEL ARBITRATION

NOW COMES Plaintiff, INSURANCE COMPANY OF THE WEST, by and through its attorneys, JAMES K. HORSTMAN and DOUGLAS M. DeWITT of the law firm IWAN CRAY HUBER HORSTMAN & VanAUSDAL LLC, and for its Petition to Compel Arbitration against COUNTY OF McHENRY, states as follows:

#### Parties

1.  Plaintiff, Insurance Company of the West, ("ICW") is an insurance company incorporated in the State of California with its principal place of business in the State of California, authorized to engage in the business of insurance in the State of Illinois.

2.  Defendant, County of McHenry, is an Illinois body politic and corporate, with its principal place of business in McHenry County, Illinois.

#### Jurisdiction and Venue

3.  Jurisdiction over this action is predicated upon 28 USC Section 1332, based on diversity of citizenship. The amount in controversy exceeds $75,000.

4.    Venue of this action is predicated upon 28 USC Section 1391, as defendant is a resident of this judicial district.

### Background

5.    This Petition to Compel Arbitration is made pursuant to Section 4 of the Federal Arbitration Act (9 USC § 4).

6.    ICW issued an Excess Public Entity Liability policy to County of McHenry, covering the period December 1, 1998 to December 1, 1999, identified as Policy No. XPL1495544 00. (ICW Policy attached hereto as Exhibit A.)

7.    The ICW Policy contains an arbitration clause and acceptance clause that provide the following:

#### N.    ARBITRATION

In the event that a dispute arises between the Insured and the Company under this agreement or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.

The Company shall have the right, but not the duty, to determine when a claim or suit should be settled and may proceed to settle the claim or suit within its Limit of Liability. The Insured and/or the Company are entitled to require the other party to submit the dispute to arbitration.

The Company and the Insured may agree to use one arbitrator. If they fail to agree on the identity of one arbitrator, the dispute shall be referred to three arbitrators; one being chosen by the Insured, one being chosen by the Company, and the third being chosen by the two aforesaid arbitrators. Should the arbitrators so chosen by the Insured and the Company not agree as to the third arbitrator within one month after both have accepted service, each party shall name two individuals of whom the other shall decline one, and the selection shall then be made by drawing lots. Should either party thereto fail to appoint an arbitrator

within one month after receipt of written notice, delivered by Certified Mail, from the other party requesting it to do so, the requesting party shall name both arbitrators, and they shall proceed in all respects as above stipulated.

The arbitrators shall consider this agreement an honorable engagement rather than merely a legal obligation. Local rules of law as to procedure and evidence will apply and arbitration shall take place in the county in which the Insured's address, as shown in the Declarations, is located. The decision of the majority of the arbitrators shall be final and binding upon both parties and not subject to appeal.

A judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction upon the request of the Insured or the Company.

## O.    ACCEPTANCE

By acceptance of this policy the Insured represents that the information contained in the Declarations and any Application submitted to obtain this insurance is accurate and provided in good faith and that this Policy is issued in reliance upon such representation. It is understood and agreed that this policy embodies all agreements between the Company and the Insured relating to this insurance.

(Ex. A at p. 39.)

8.      The present dispute between the parties involves a disagreement regarding the coverage for a settlement made in an action brought by Indeck Pleasant Valley and Indeck Operations against the County in the Circuit Court for the Nineteenth Judicial Circuit, McHenry, Illinois, identified as Case No. 99 MR 176 ("the Indeck Action").

9.      In March 2002, ICW filed an action in the Northern District of Illinois to determine the extent of its obligations to pay for the defense of the County in the Indeck Action based upon the allegations contained within the face of the Indeck complaint. This action was ultimately dismissed on ripeness grounds because the County had not yet exhausted its self-insured retention limits under the Policy.

3

10.     On September 4, 2002, Indeck made a time-limit demand of $5 million to the County.

11.     On September 25, 2002, the County certified to ICW that it had exhausted its self-insured retention under the ICW policy.

12.     On September 25, 2002, ICW proposed arbitration of the insurance issues to the County.

13.     In October 2002, a second action was filed in the Northern District of Illinois to determine the extent of ICW's obligations to pay for the defense of the County in the Indeck Action based upon the allegations contained within the face of the Indeck complaint.

14.     Following several meetings regarding the Indeck action and Indeck's time-limit demand, the County forwarded correspondence to ICW on November 14, 2002, wherein it demanded ICW to enter into settlement negotiations and eliminate the County's exposure to monetary damages in the Indeck action.

15.     On November 21, 2002, ICW agreed to meet Indeck's time-limit demand and settle all of Indeck's damages claims against the County for $5 million.

16.     On December 10, 2002, following the settlement with Indeck, ICW indicated that it would be dismissing the October 2002 action so that the coverage issues regarding the settlement could be arbitrated.

17.     On December 12, 2002, ICW provided the County's counsel with a written demand for arbitration under the Policy and further requested the County to either nominate an arbitrator to serve by agreement of ICW and the County or indicate its preference for an arbitration panel.

18.     On December 17, 2002, ICW repeated its request to the County to select an arbitrator.

19.     On December 17, 2002, the County informed ICW of its position that it was under no obligation to arbitrate this dispute.

20.     On January 21, 2003, ICW again requested the County to designate an arbitrator, and in a response on February 24, 2003, the County again refused to appoint an arbitrator.

21.     In March 2003, this Court dismissed the second declaratory judgment for lack of subject matter jurisdiction because the County had not demanded payment or reimbursement of any defense costs from ICW.

22.     On August 27, 2003, ICW repeated its demand for arbitration and requested the County to nominate a single arbitrator to either serve by agreement of the parties or to be part of an arbitration panel. In this written demand, ICW formally nominated C. David Sullivan as an arbitrator.

23.     On September 22, 2003, the County re-stated its belief that it was not obligated to arbitrate the issues surrounding the Indeck action. The County further refused to arbitrate because "the arbitration agreement is against public policy as its system for selecting arbitrators does not allow for arbitration does not allow for arbitration by an independent and unbiased arbitrator." The County did indicate that if the County was required to nominate an arbitrator, it would nominate "John Brechin," but it provided no information to allow anyone to contact Mr. Brechin.

24.     On September 23, 2003, ICW requested clarification of the County's position and it further requested contact information for John Brechin. ICW informed the

County that if it did not receive contact information for John Brechin from the County by October 7, 2003, ICW would proceed to appoint a second arbitrator and submit the matter to arbitration as provided under the Policy.

25. On October 7, 2003, the County reiterated its refusal to participate in the arbitration with ICW.

26. On October 24, 2003, ICW informed the County that the two selected arbitrators would be selecting a third arbitrator to complete the arbitration panel.

27. Following the selection of the entire arbitration panel, as dictated by the terms of the Policy's arbitration clause, an organizational meeting was scheduled for the parties on March 22, 2004.

28. On March 22, 2004, counsel for the County appeared at the organizational meeting and informed ICW and the arbitration panel that the County would not be participating in the arbitration. Counsel for the County informed ICW and the arbitration panel that it had filed a complaint in the Northern District of Illinois seeking to enjoin the arbitration.

29. At the organizational meeting, ICW was served with a copy of the Verified Complaint for Preliminary and Permanent Injunction and Declaratory Judgment that was filed by the County on March 19, 2004.

30. ICW moved to stay the action or, in the alternative, dismiss the action because the arbitration clause of the Policy mandates that the dispute surrounding the settlement of the Indeck action be arbitrated.

31.     On October 25, 2004, Judge Kennelly ruled that the terms of the Policy required the parties to submit their dispute to arbitration and the County's action was dismissed. (See Order attached as Ex. B.)

32.     The County appealed the district court's dismissal of its action but did not seek a stay of the October 25, 2004 order.

33.     On January 7, 2005, counsel for the County forwarded correspondence to both ICW and the members of the arbitration panel.     (See January 7, 2005 Correspondence attached hereto as Ex. C.) In this correspondence, the County's counsel informed ICW and the members of the arbitration panel that if the arbitration (originally scheduled for an organizational meeting on March 22, 2004) was revived, the County would likely: (a) sue ICW's counsel for interference with contract, (b) sue each of the three arbitrators for interference with the County's economic expectations, (c) file a lawsuit seeking equitable discharge of the existing panel of arbitrators, and (d) appoint its own panel of arbitrators to enter arbitration award.

34.     Under the terms of the ICW Policy, the County is required to arbitrate the present dispute with ICW regarding the coverage of the settlement with Indeck.

35.     Despite its obligation to arbitrate the present dispute, the County continues to reject arbitration by threatening to sue ICW's counsel and the arbitration panel in the event that the arbitration goes forward. ICW has been aggrieved by this rejection and ICW hereby requests this Court to address the issues raised in the Petition to Compel.

36.     ICW has informed the panel of arbitrators that it will seek an order of this Court compelling arbitration of the matter.

WHEREFORE, Petitioner Insurance Company of the West prays that an Order be made and entered herein directing that arbitration between the parties proceed in the manner required by the Insurance Company of the West insurance policy with regard to coverage for the settlement of the Indeck matter, and for such other relief as is just and proper, together with the costs and disbursements incurred by Insurance Company of the West in connection with this application.

IWAN CRAY HUBER HORSTMAN
& VanAUSDAL LLC

By:_____

Attorneys for Plaintiff, Insurance Company of the West

IWAN CRAY HUBER HORSTMAN
& VanAUSDAL LLC
303 West Madison, Suite 2200
Chicago, IL  60606
(312) 332-8494
(312) 332-8451 (Fax)

 I.C.W. GROUP

COMPANY COPY

RENEWAL CERTIFICATE

RENEWAL DECLARATION   * * * EFFECTIVE 12/01/99

| POLICY NUMBER | POLICY PERIOD | | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENT |
|---|---|---|---|---|---|
| XPL 1495544 01 | 12/01/99 | 12/01/00 | XPL1495544 | INSURANCE CO OF THE WEST | 0001399 |

| NAME AND ADDRESS OF INSURED | | AGENT |
|---|---|---|
| COUNTY OF MCHENRY, IL 200 N. SEMINARY AVE. WOODSTOCK, IL           60098 | | MARSH & MC LENNAN GLOBAL 500 WEST MONROE, SUITE 21 CHICAGO, IL           060661 |

N CONSIDERATION OF PAYMENT OF THE TOTAL PREMIUM SPECIFIED IN THIS CERTIFICATE
HE ABOVE NUMBERED POLICY IS RENEWED FOR THE PERIOD SHOWN AND IS OTHERWISE
UBJECT TO ALL THE TERMS, CONDITIONS, FORMS AND ENDORSEMENTS ATTACHED TO THE
OLICY AND TO THIS RENEWAL CERTIFICATE.  THIS PREMIUM MAY BE SUBJECT TO
DJUSTMENT.

IIS RENEWAL CERTIFICATE CONSISTS OF THE FOLLOWING COVERAGE PARTS:

                                                          PREMIUM

COMMERCIAL PROPERTY COVERAGE PART                        $
     AS EXPIRING   _   NEW SCHEDULE ATTACHED

COMMERCIAL INLAND MARINE COVERAGE PART                   $
     _   AS EXPIRING   _   NEW SCHEDULE ATTACHED

COMMERCIAL CRIME COVERAGE PART                           $
     _   AS EXPIRING   _   NEW SCHEDULE ATTACHED

COMMERCIAL GENERAL LIABILITY COVERAGE PART               $ INCLUDED
     X   AS EXPIRING

COMMERCIAL AUTOMOBILE COVERAGE PART                      $ INCLUDED
     X   AS EXPIRING


     PREMIUM SHOWN $ 89,000        ESTIMATED ANNUAL PREMIUM  $ 89,000
     IS PAYABLE AT INCEPTION                                $
                                   MINIMUM EARNED PREMIUM    $ PER UND0250

AC   NIL

)534 (0292)                                           PAGE 1 OF 2

**EXHIBIT**

**A**

000016

7/25/00



I.C.W. GROUP

COMPANY COPY

RENEWAL CERTIFICATE

RENEWAL DECLARATION     * * * EFFECTIVE 12/01/99

| POLICY NUMBER | POLICY PERIOD FROM | TO | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENT |
|---|---|---|---|---|---|
| XPL 1495544 01 | 12/01/99 | 12/01/00 | XPL1495544 | INSURANCE CO OF THE WEST | 0001399 |

| NAME AND ADDRESS OF INSURED | | AGENT |
|---|---|---|
| COUNTY OF MCHENRY, IL<br>2200 N. SEMINARY AVE.<br>WOODSTOCK, IL                      60098 | | MARSH & MC LENNAN GLOBAL<br>500 WEST MONROE, SUITE 21<br>CHICAGO, IL                      060661 |

FORMS AND ENDORSEMENTS ATTACHED TO THIS RENEWAL CERTIFICATE:

    UND0250   0495

OUNTERSIGNATURE DATE:

OUNTERSIGNED AT:

UTHORIZED SIGNATURE: _____

PAGE 2 OF 2

ⱱD0534 (0292)

 I.C.W. GROUP

COMPANY COPY

MINIMUM EARNED PREMIUM ENDORSEMENT

RENEWAL DECLARATION    * * * EFFECTIVE 12/01/99

| POLICY NUMBER | POLICY PERIOD | | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENT |
|---|---|---|---|---|---|
| XPL 1495544 01 | 12/01/99 | 12/01/00 | XPL1495544 | INSURANCE CO OF THE WEST | 0001399 |

| NAME AND ADDRESS OF INSURED | | AGENT | |
|---|---|---|---|
| COUNTY OF MCHENRY, IL<br>2200 N. SEMINARY AVE.<br>WOODSTOCK, IL | 60098 | MARSH & MC LENNAN GLOBAL<br>500 WEST MONROE, SUITE 21<br>CHICAGO, IL | 060661 |

POLICY MINIMUM EARNED PREMIUM ENDORSEMENT

IN THE EVENT OF CANCELLATION AT THE INSURED'S REQUEST OR FOR NON-PAYMENT OF PREMIUM, THE POLICY MINIMUM EARNED PREMIUM WILL BE $ 22,250

NOTHING IN THIS ENDORSEMENT IS DEEMED TO AFFECT THE COMPANY'S CANCELLATION RIGHTS WHICH REMAIN AS STATED IN THIS POLICY.

PAGE 1 OF 1

IND 0250 (04-95)

000018

 **ICW GROUP**

COMPANY COPY

## COMMERCIAL PACKAGE POLICY

| POLICY NUMBER | POLICY PERIOD FROM - TO | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| XPL 1495544 00 | 12-01-98 12-01-99 | CSR 1328428 02 | INSURANCE COMPANY OF THE WEST | 1399 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| COUNTY OF MCHENRY, IL<br>2200 NORTH SEMINARY AVENUE<br>WOODSTOCK, IL 60098 | J&H MARSH & MCLENNAN<br>500 WEST MONROE ST., SUITE 2100<br>CHICAGO, IL 60661 |

### DECLARATIONS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

POLICY
PERIOD: FROM    12-01-98    12-01-99

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE.

FORM OF BUSINESS
☐ INDIVIDUAL  ☐ CORPORATION  ☐ PARTNERSHIP  ☐ JOINT VENTURE
☒ PUBLIC ENTITY

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH AN ☒ IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | |
|---|---|
| ☐ COMMERCIAL PROPERTY COVERAGE PART | EXCLUDED |
| ☐ COMMERCIAL INLAND MARINE COVERAGE PART | EXCLUDED |
| ☐ COMMERCIAL CRIME COVERAGE PART | EXCLUDED |
| ☐ COMMERCIAL BOILER AND MACHINERY | EXCLUDED |
| ☒ COMMERCIAL AUTOMOBILE COVERAGE PART | INCLUDED |
| ☒ EXCESS PUBLIC ENTITY LIABILITY COVERAGE | INCLUDED |

| | |
|---|---|
| ESTIMATED ANNUAL PREMIUM | $84,765 |
| PREMIUM PAYABLE AT INCEPTION | $84,765 |
| MINIMUM EARNED PREMIUM | $ PER UND0250 |

AC
* * * * * * * * * * * * * * * * * * * * * * * * * * *

| COUNTERSIGNATURE DATE: | COUNTERSIGNED AT: | AUTHORIZED SIGNATURE: |
|---|---|---|
| | | |

Page 1 of 2

000019



## ICW GROUP

COMPANY COP

### COMMERCIAL PACKAGE POLICY

| POLICY NUMBER | POLICY PERIOD FROM TO | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| XPL 1495544 00 | 12-01-98 to 12-01-99 | CSR 1328428 02 | INSURANCE COMPANY OF THE WEST | 1399 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| COUNTY OF MCHENRY, IL<br>2200 NORTH SEMINARY AVENUE<br>WOODSTOCK, IL 60098 | J&H MARSH & MCLENNAN<br>500 WEST MONROE STREET, SUITE 2100<br>CHICAGO, IL 60661 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

IL 0017 (11-98), UND0370 (08-89), IL 0003 (04-98), UND0 250 (04-95)

COUNTERSIGNATURE DATE:

COUNTERSIGNED AT:

AUTHORIZED SIGNATURE _____

✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳

 I.C.W. GROUP

COMPANY COPY

POLICY CHANGES ENDT. NO. 2-00

AMENDED DECLARATION    * * * EFFECTIVE 12/01/98

| POLICY NUMBER | POLICY PERIOD | | PREVIOUS COVERAGE | COVERAGE IS PROVIDED IN THE | AGENT |
|---|---|---|---|---|---|
| XPL 1495544 00 | 12/01/98 | 12/01/99 | | INSURANCE CO OF THE WEST | 0001399 |

| NAME AND ADDRESS OF INSURED | | AGENT | |
|---|---|---|---|
| COUNTY OF MCHENRY, IL<br>2200 N. SEMINARY AVE.<br>WOODSTOCK, IL          60098 | | MARSH & MC LENNAN GLOBAL<br>500 WEST MONROE, SUITE 21<br>CHICAGO, IL          060661 | |

POLICY CHANGES

COVERAGE PARTS AFFECTED:    PUBLIC ENTITY LIABILITY

CHANGES:    IT IS AGREED THE KNOWLEDGE OF OCCURRENCE FORM, ENDORSEMENT F
IS ADDED PER THE ATTACHED.

ND0515 (08/91)

000021

04/26/99

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #: F

| | |
|---|---|
| POLICY #: XPL 1495544-00 | EFFECTIVE DATE: 12-01-98 |
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
SCHOOL LIABILITY POLICY
EXCESS SCHOOL LIABILITY POLICY

## KNOWLEDGE OF OCCURRENCE

It is agreed that knowledge of an occurrence, accident, injury, claim, suit or loss by the Insured's agent, servant or employee shall not, in itself, constitute knowledge by the Named Insured, unless and until the Insurance Manager has knowledge thereof.

000022

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 1-00

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| XPL 1495544-00 | 12-01-98 | INSURANCE COMPANY OF THE WEST |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| COUNTY OF MCHENRY, IL | |

**COVERAGE PARTS AFFECTED**

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY

**CHANGES**

IT IS AGREED THE WATERCRAFT EXCLUSION IS AMENDED PER THE AMENDMENT OF WATERCRAFT EXCLUSION FORM PE 1086 (12/97) ATTACHED.

IT IS FURTHER AGREED THE SELF INSURED RETENTION IS AMENDED PER THE SELF INSURED RETENTION (SIR) STOP LOSS LIMIT ENDORSEMENT FORM PE 1005 (03/93) ATTACHED.

Authorized Representative Signature

000023

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

EXCESS PUBLIC ENTITY LIABILITY

## Self Insured Retention (SIR) Stop Loss Limit Endorsement

| | | |
|---|---|---|
| SIR Stop Loss Limit Aggregate: | $750,000 | |
| Company Limit of Liability: | $5,000,000 | Annual Aggregate |
| Maintenance SIR: | 10,000 | Per Occurrence |

It is agreed that the insured's per occurrence retention shown in Item 2 of the Excess Public Entity Liability Declarations will be limited to the annual aggregate amount shown in the SIR Stop Loss Limit section of this endorsement. Only occurrences for which coverage applies under the Excess Public Entity Liability Form EPEDOL (5/91), and only actual claim payments, including indemnity and defense costs, will qualify for credit towards satisfying the SIR Stop Loss Limit Aggregate.

It is agreed that regardless of the number of occurrences subject to coverage under this endorsement the Company's liability is limited to a $5,000,000 annual aggregate as stated above. In the event that the Company's limit of liability for coverage under this endorsement is exhausted by claim payments for indemnity and/or defense costs, each and every occurrence not eligible for coverage due to the exhaustion of said limits will then be subject to the self insured retention as shown in item 2 of the Excess Public Entity Liability Declarations to which this endorsement applies.

It is further agreed that regardless of the number of occurrences subject to coverage under this endorsement, a maintenance SIR shall apply to each separate occurrence as specified above.

This endorsement is subject to all exclusions, definitions, conditions and other terms of the policy to which it is attached.

INSURED'S SIGNATURE _____

DATED _____

000024

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| POLICY #: XPL 1495544-00 | EFFECTIVE DATE: 12-01-98 |
|---|---|
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
SCHOOL LIABILITY POLICY
EXCESS SCHOOL LIABILITY POLICY

## AMENDMENT OF WATERCRAFT EXCLUSION

It is agreed that Exclusion E is deleted and replaced with the following:

E.  To any liability for damages arising out of the ownership, maintenance, operation, use, loading or unloading of:

1.  any watercraft owned or operated by or rented or loaned to any Insured; or

2.  any other watercraft operated by any person in the course of his employment by any Insured;

But this exclusion does not apply to watercraft under fifty (50) feet in length;

All other terms and conditions in the policy shall remain unchanged.

000025

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Insura ☐ Company of the West

S a n   D i e g o ,   C a l i f o r n i a

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly Authorized Agent of this Company at the agency hereinbefore mentioned.

James W. Austin III

Secretary

Bernard Feldman

President

000027

DOE70. (08-89)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
PUBLIC ENTITY LIABILITY

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was is-sued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

000028

ENDORSEMENT

# INSURANCE COMPANY OF THE WEST

Policy No.    :       XPL 1495544 00

Effective Date  :       12-01-98

Issued        :       COUNTY OF MCHENRY, IL

## POLICY MINIMUM EARNED PREMIUM ENDORSEMENT

In the event of cancellation at the insured's request or for non-payment of premium, the Policy Minimum Earned Premium will be **$ 21,191.**

Nothing in this endorsement is deemed to affect the company's cancellation rights which remain as stated in this policy.

000029

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| POLICY #: XPL 1495544.00 | EFFECTIVE DATE: 12-01-98 |
|---|---|
| NAMED INSURED COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY - CLAIMS-MADE COVERAGE FORM

## PUBLIC ENTITY LIABILTY FORMS LIST

THE FORMS INDICATED BELOW ARE APPLICABLE TO THIS COVERAGE PART AT ISSUANCE:

| | | |
|---|---|---|
| PEDOL-D | (03/90) | Excess Public Entity Liability Declarations |
| PEDOL | (05/91) | Excess Public Entity Liability – Retention |
| E-1033 | (12/94) | Total Pollution Exclusion Exception for Designated Products |
| E-1026 | (05/92) | Cancellation Clause |
| E-1005 | (03/93) | Self Insured Retention Stop Loss End. Public Entity Liability |
| E-1024B | (12/97) | Exclusion, Failure to Supply (Public Entity Form) |
| E-1027 | (05/92) | Bridge Endorsement |
| ndorsement A | | Blanket Additional Insured |
| ndorsement B | | Unintentional Errors & Omissions |
| ndorsement C | | Knowledge of Occurrence |
| ndorsement D | | Self Insured Retention Satisfaction End. |
| ndorsement E | | Amendment to Medical Exclusion "K" |
| E-1044A | (10/97) | Deletion of Excl. N & O (EPEDOL 5-91) |
| E-1066B | (12/97) | Amend. of Cov C - Employment Practices (EPEDOL, SIR) |
| E-1076 | (12/97) | Time Element Pollution Exclusion |

000030

# INSURANCE COMPANY OF THE WEST

NAMED INSURED :    COUNTY OF MCHENRY, IL

POLICY NUMBER :    XPL 1495544 00

POLICY TERM    :    12-01-98 TO 12-01-99

## EXCESS PUBLIC ENTITY LIABILITY DECLARATIONS

ITEM 1    LIMIT OF LIABILITY

      PER OCCURRENCE             $ 5,000,000

      GENERAL ANNUAL AGGREGATE     $ N/A

      PUBLIC ENTITY ERRORS AND
        OMISSIONS ANNUAL AGGREGATE    $ 5,000,000

ITEM 2    RETENTION-PUBLIC OFFICIALS E & O ONLY

      PER OCCURRENCE            $ 250,000

ITEM 3    PREMIUM

      FIXED ANNUAL PREMIUM        $ INCLUDED

      NON-FIXED ANNUAL PREMIUM     $ N/A

                                    $ INCLUDED

      MINIMUM PREMIUM
      (NOT SUBJECT TO CANCELLATION PROVISIONS)

# EXCESS PUBLIC ENTITY LIABILITY

Throughout this policy, words and phrases that appear in bold have "special" meanings; they are defined in Section VI - Definitions.

The insurance company named in the Declarations hereof, hereafter called "Company", in consideration of the payment of the premium and in reliance upon the statements in the Declarations and Application and subject to the limit of liability, exclusions, conditions and other terms of the policy agrees with the Named Insured as follows:

I. **INSURING AGREEMENT**

A. The Company will pay on behalf of the Insured for the ultimate net loss in excess of the retention which the Insured shall become legally obligated to pay by reason of liability imposed by law or liability for personal injury or property damage of others assumed by contract, insofar as the Named Insured may legally do so, for damages because of:

Coverage A   Personal Injury

Coverage B   Property Damage

Coverage C   Public Entity Errors and Omissions

and caused by an occurrence to which this insurance applies during the policy period anywhere in the world.

II. **DEFENSE AND SETTLEMENT**

A. The Company shall have the right and opportunity to associate with the Insured in the defense, appeal and control of any claim or suit arising out of any occurrence and seeking damages in excess of the retention. In such event, the Insured and the Company shall cooperate fully. If a claim is made or a suit is brought seeking damages in excess of the retention, no defense costs shall be incurred on behalf of the Company without the written consent of the Company and, notwithstanding such consent, all such costs shall be reasonable.

B. If a settlement made with the consent of the Company, or a judgment against the Insured, plus defense costs, exceeds the retention, the Company shall pay the amount in excess of the retention, subject to the Company's limit of liability.

C. The Company shall not be responsible for any further sums or to defend any suit after the applicable limit of liability set out in Item 1 of the Declarations has been exhausted in the payment of losses.  *if assume the defense*

III. **SUPPLEMENTARY PAYMENTS**

The Company will pay as supplementary payments in addition to the applicable limit of liability:

A. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

B. Expenses incurred by the Insured for first aid to others at the time of an accident, for Bodily Injury to which this policy applies;

C. Reasonable expenses incurred by the Insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $100 per day.

D. All interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

000032

## IV. COMPANY'S LIMIT OF LIABILITY

A. Regardless of the number of

1. Insureds under this policy;

2. persons or organizations who sustain injury or damage; or

3. claims made or suits brought on account of personal injury, property damage, and/or public entity errors and omissions,

the Company's liability for ultimate net loss resulting from any one occurrence shall be limited to the amount stated in the Declarations as applicable "per occurrence"; provided, however, that the Company's liability shall be further limited to (a) the amount stated in the Declarations as "general annual aggregate" with respect to all ultimate net loss because of personal injury and property damage combined, except ultimate net loss because of injury or damage from the automobile hazard or (b) the amount stated in the Declarations as "public entity errors and omissions annual aggregate" with respect to all ultimate net loss because of public entity errors and omissions, which occurs during each annual period while this policy is in force commencing from its effective date.

B. For the purpose of determining the limit of the Company's liability and the retention of the Insured, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

C. Public Entity Errors and Omissions taking place over more than one policy period insured by this company shall be deemed to have taken place during the last policy period and only that limit of liability shall apply.

D. If the Limit of Liability is paid prior to this policy's termination date for losses other than losses arising from the automobile hazard, this policy's premium is fully earned.

## V. EXCLUSIONS

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the Insured as follows:

A. To any obligation for which the Insured or any of its insurers may be held liable under any workers' or unemployment compensation, disability benefits or similar law, including United States Longshoremen's and Harborworkers' benefits;

B. To Bodily Injury to:

1. an employee of the Insured arising out of and in the course of employment by the Insured; or

2. the spouse, child, parent, brother or sister of that employee as a consequence of 1. above;

This exclusion applies whether the Insured may be liable as an employer or in any other capacity, except with respect to liability of others assumed under contract;

C. To any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft owned or operated by or rented or loaned to any Insured, or any other aircraft operated by any person in the course of his employment by an Insured; D.

D. To any injury to or destruction of:

1. property owned by the Insured; or

2. property rented or leased to the Insured where the Insured had assumed liability for damage to or destruction of such property unless the Named Insured would have been liable in the absence of such assumption of liability;

E. To any liability for damages arising out of the ownership, maintenance, operation, use, loading or unloading of:

1. any watercraft owned or operated by or rented or loaned to any Insured; or

2. any other watercraft operated by any person in the course of his employment by any Insured;

But this exclusion does not apply to watercraft under twenty-six (26) feet in length;



F. Pollution:

1. To any injury, damage or any other liability which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

2. Any loss, cost or expense arising out of any:

    a. Request, demand or order that any Named Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating; detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

This exclusion does not apply to any injury, damage or any other liability caused by heat, smoke or fumes from a hostile fire.

G. To any liability arising out of or in any way connected with any operation of the principles of eminent domain, condemnation proceedings or inverse condemnation, by whatever name called, and whether or not liability accrues directly against any Insured by virtue of any agreement entered into by or on behalf of any Insured;

H. To any liability:

1. arising in whole, or in part, out of any Insured obtaining remuneration or financial gain to which the Insured was not legally entitled; or

2. arising out of the willful violation of a penal code or ordinance committed by or with the knowledge or consent of any Insured; except that any act pertaining to any one Insured shall not be imputed to any other Insured for the purpose of determining the application of this exclusion;

I. To any liability arising out of estimates of probable costs or cost estimates being exceeded or faulty preparation of bid specifications or plans including architectural plans;

J. To any liability arising out of the ownership, maintenance, operation, or use of any airfield, runway, hangar, building or other property in connection with aviation activities or any other use of airport facilities or property;

This exclusion shall also apply to liability arising from owned, non-owned or hired automobiles or mobile equipment while such automobiles or equipment are on the premises of an airport owned, maintained or operated by the Insured. This exclusion applies only to automobiles used in connection with the operation of such airport or in connection with aviation activities;

K. To any liability arising out of the:

1. ownership, maintenance or operation of a hospital, nursing home or medical clinic;

2. medical, surgical or dental activities of any physician, surgeon or dentist.

This exclusion does not apply to any liability arising out of the activities of any employee who is licensed and certified as a nurse, emergency medical technician or paramedic in the scope of their duties as such.

L. To any liability caused by, resulting from, contributed to or aggravated by:

1. any earth movement; including but not limited to, earthquake, landslide, earth sinking, rising, shifting or subsidence; or

2. volcanic eruption, explosion or effusion.

This exclusion applies even if a pre-existing or concurrent cause is deemed to be partly or wholly responsible;

M. To any liability arising out of the Insured's activities in a fiduciary capacity as respects any employee benefit plan;

N. To any liability for any salary or wages due because of discrimination or because of the wrongful termination of any employee or official of the Insured;

O. To any liability arising out of discrimination in hiring practices as a result of race, religion, sex or any form of discrimination specified in any federal or civil rights law;

P. To any liability due to the failure to perform or breach of a contractual obligation;

000034

Q. To any liability for damages arising from the offering, purchase, sale, exchange or issuance by an insured of securities of any Insured subject to provisions of the Securities Act of 1933, Securities Exchange Act of 1934, or any other federal law or regulation applicable to the offering, sale, purchase, or exchange of securities, all as amended, or any state "Blue Sky Laws";

R. To any liability arising out of the complete or partial failure to supply electricity, gas, or water, or arising out of the interruption of the electrical power, fuel or water supply;

S. To any liability arising out of the rupture, bursting, overtopping, accidental discharge, or partial or complete structural failure of any dam;

T. To any liability arising out of the manufacture of, or mining of, or use of, or exposure to asbestos products, asbestos fibers or asbestos dust or to any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, use of, or exposure to asbestos products, asbestos fibers or asbestos dust;

U. To any liability based upon or attributable to the rendering or failure to render any opinion, treatment, consultation or service if such opinion, treatment, consultation or service was rendered or was not rendered while such Insureds were engaged in any activity for which they receive compensation from any source other than the Named Insured and/or were gratuitously engaged other than by specific direction of the Named Insured;

V. To any liability for the refund of taxes, fees or assessments;

W. To any liability due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## VI. DEFINITIONS

A. Automobile shall mean a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, but automobile does not include mobile equipment.

   1. Owned Automobile — an automobile owned by the Named Insured;

   2. Hired Automobile — an automobile used under contract on behalf of, or loaned to, the Named Insured provided such automobile is not owned by or registered in the name of:

      a. the Named Insured; or

      b. an officer, Servant or employee of the Named Insured who is granted an operating allowance of any sort for the use of such automobile.

   3. Non-owned automobile — any other automobile.

B. Bodily Injury means Bodily Injury, sickness or disease sustained by a person including care, loss of service or death resulting from any of these at any time.

C. Completed Operations Hazard includes liability arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the liability occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

   1. when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

   2. when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

   3. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or entity other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed. The completed operations hazard does not include liability arising out of:

   1. operations in connection with the transportation of property, unless the liability arises out of a condition in or on a vehicle created by the loading or unloading thereof;

   2. the existence of tools, uninstalled equipment or abandoned or unused materials; or

000035

3. operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations."

D. **Defense Costs** means all fees and expenses caused by and relating to the adjustment, investigation, defense or litigation of a claim including attorney's fees and court costs. Defense costs shall not include the office expenses of the Company or the Insured nor the salaries of employees or officials of the Company or any Insured.

E. **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

F. **Insured** means the Named Insured and the following:

1. past or present employees, servants or elected or appointed officials of the Named Insured and such commissions, boards, districts, and authorities which operate under the direct supervision and control of the Named Insured, when acting in their capacity as such employees or elected or appointed officials; and

2. those individuals and under the circumstances described in subsection F.1. above while such individuals operate any automobile owned by, loaned to or leased by the Named Insured.

G. **Mobile Equipment** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self propelled;

1. not subject to motor vehicle registration; or

2. maintained for use exclusively on premises owned by or rented to the Named Insured, including the way immediately adjoining; or

3. designed for use principally off public roads; or

4. designed or maintained for the sole purpose of affording mobility to equipment of the following type forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

H. **Named Insured** shall mean the entity designated as such on the Declarations of the policy of which this is a part.

I. **Occurrence** means:

1. with respect to Bodily Injury or Property Damage: an accident or event, including continuous or repeated exposure to substantially the same generally harmful conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of any Insured except for assault and battery committed or directed for the purpose of protecting persons or property.

2. with respect to Personal Injury (other than Bodily Injury) and Public Entity Errors and Omissions respectively: an offense described in the definitions of those terms in this section.

J. **Personal Injury** means:

1. Bodily Injury;

2. false arrest, false imprisonment, wrongful entry, wrongful eviction, wrongful detention or malicious prosecution;

3. humiliation, mental anguish, mental injury, shock or fright arising out of Item 1 Bodily Injury or Item 2 false arrest, false imprisonment, wrongful entry, wrongful eviction, wrongful detention or malicious prosecution;

4. the publication or utterance of a libel or slander or of other defamatory or derogatory material, or a publication or utterance in violation of rights of privacy, unless done by or at the direction of the Insured with knowledge of its falsity;

5. piracy, unfair competition or idea misappropriation under an implied contract or infringement of copyright, title or slogan arising out of the Named Insured's advertising activities;

6. discrimination, unless insurance thereof is prohibited by law;

7. assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing or eliminating danger to person or property.

**000036**

K. **Pollutants** means all irritants or contaminants including, but not limited to smoke, vapors, soot, fumes,


No damages reprensl

L. Products hazard includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after physical possession of such products has been relinquished to others.

M. Property damage means:

1. physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom; or

2. loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

N. Public Entity Errors and Omissions means any actual or alleged misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance, or nonfeasance by the Insured, individually or collectively, in the discharge of their duties for the Named Insured, or any matter claimed against them solely by reason of their being or having been an Insured.

O. Retention means the self-insured retention of the Insured including defense costs described in Item 2 of the Declarations.

P. Servant means an individual, other than an independent contractor, who is authorized by the Named Insured to act on behalf of the Named Insured but who acts without compensation.

Q. Ultimate net loss means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or by compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages and other collectible insurance.

R. Waste means all waste including materials to be recycled, reconditioned or reclaimed.

## VII. CONDITIONS

A. PREMIUM

The premium set forth in the Declarations is an estimated premium only, unless indicate premium. Upon termination of this policy, where the premium is estimated, earned premi computed in accordance with the premium computation provisions of an endorsement atta Where the earned premium thus computed exceeds the advance premium paid, the Insured remaining earned premium to the Company. Where the earned premium thus computed is I advance premium paid, the Company shall return the unearned premium to the Named Insur

B. INSPECTION AND AUDIT

The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C. SEVERABILITY OF INTEREST

The term "the Insured" is used severally and not collectively, but the inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability.

D. PAYMENTS

If circumstances should occur wherein any Insured or any combination of Insureds shall be determined to be legally liable to one or more persons in a sum in excess of the limit of liability of the Company, or in such manner as to render one or more Insureds liable in excess of the limit of liability of the Company, then the Company may, at its option, apportion its payment on behalf of each Insured in the same proportion that the liability of each Insured bears to the total liability of all Insureds. Such payments by the Company shall be deemed to constitute full and final payment by the Company of all of its obligations to all Insureds, and in no event shall the Company be liable for more than the agreed limit of liability.

E. CANCELLATION

This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at its last known address, written notice stating when not less than sixty days thereafter such cancellation shall be effective, provided that, if the Insured fails to discharge when due any of its obligations in connection with the payment of premium for this policy or any installment thereof, this policy may be cancelled by the Company by mailing to the Named Insured at its last known address, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. If the Company cancels, earned premium shall be computed pro rata. If the Named Insured cancels, return premium shall be computed as 90% of pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

F. INSURED'S DUTIES IN THE EVENT OF A CLAIM

In the event of a claim which is greater than or equal to, or an occurrence which is reserved at greater than or equal to, fifty (50) percent of the Insured's retention, the Insured shall:

1. give to the Company, or any of its authorized agents, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses as soon as practicable;

2. immediately forward to the Company, or any of its authorized agents, every demand, notice, summons or other processes received by the Insured or its representative.

The Insured shall report losses, without regard to liability, falling within the following classifications:

a. fatalities;

b. spinal cord injuries (para or quadriplegics);

c. amputations;

d. loss of sight;

e. severe burns;

f. serious head injury;

g. serious loss of use of any body function;

h. long term hospitalization.

000038

The Insured shall cooperate with the Company, and upon the Company's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or entity who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this policy, the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur any expense in excess of its retention.

However, in the event that an ultimate net loss in excess of the retention becomes certain either through trial court judgment or agreement among the Insured, the claimant and the Company, then the

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company. Any person or organization or the local representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or its legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

## M. APPEALS

In the event the Insured or any insurer with valid and collectible insurance applying to an occurrence elects not to appeal a judgment in excess of the retention, the Company may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount specified in Item 1 of the Declarations.

## N. ARBITRATION

In the event that a dispute arises between the Insured and the Company under this agreement or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.

The Company shall have the right, but not the duty, to determine when a claim or suit should be settled and may proceed to settle the claim or suit within its Limit of Liability. The Insured and/or the Company are entitled to require the other party to submit the dispute to arbitration.

The Company and the Insured may agree to use one arbitrator. If they fail to agree on the identity of one arbitrator, the dispute shall be referred to three arbitrators; one being chosen by the Insured, one being chosen by the Company, and the third being chosen by the two aforesaid arbitrators. Should the arbitrators so chosen by the Insured and the Company not agree as to the third arbitrator within one month after both have accepted service, each party shall name two individuals of whom the other shall decline one, and the selection shall then be made by drawing lots. Should either party hereto fail to appoint an arbitrator within one month after receipt of written notice, delivered by Certified Mail, from the other party requesting it to do so, the requesting party shall name both arbitrators, and they shall proceed in all respects as above stipulated.

The arbitrators shall consider this agreement an honorable engagement rather than merely a legal obligation. Local rules of law as to procedure and evidence will apply and arbitration shall take place in the county in which the Insured's address, as shown in the Declarations, is located. The decision of the majority of the arbitrators shall be final and binding upon both parties and not subject to appeal.

A judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction upon the request of the Insured or the Company.

## O. ACCEPTANCE

By acceptance of this policy the Insured represents that the information contained in the Declarations and any Application submitted to obtain this insurance is accurate and provided in good faith and that this policy is issued in reliance upon such representation. It is understood and agreed that this policy embodies all agreements between the Company and the Insured relating to this insurance.

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

EXCESS PUBLIC ENTITY LIABILITY

## Self Insured Retention (SIR) Stop Loss Limit Endorsement

SIR Stop Loss Limit Aggregate: _____$750,000_____

Company Limit of Liability: _____$1,000,000_____ Annual Aggregate

Maintenance SIR: _____10,000_____ Per Occurrence

It is agreed that the insured's per occurrence retention shown in Item 2 of the Excess Public Entity Liability Declarations will be limited to the annual aggregate amount shown in the SIR Stop Loss Limit section of this endorsement. Only occurrences for which coverage applies under the Excess Public Entity Liability Form endorsement _EPEDOL (5/91)_, and only actual claim payments, including indemnity and defense costs, will qualify for credit towards satisfying the SIR Stop Loss Limit Aggregate.

It is agreed that regardless of the number of occurrences subject to coverage under this endorsement the Company's liability is limited to a $1,000,000 annual aggregate as stated above. In the event that the Company's limit of liability for coverage under this endorsement is exhausted by claim payments for indemnity and/or defense costs, each and every occurrence not eligible for coverage due to the exhaustion of said limits will then be subject to the self insured retention as shown in item 2 of the Excess Public Entity Liability Declarations to which this endorsement applies.

It is further agreed that regardless of the number of occurrences subject to coverage under this endorsement, a maintenance SIR shall apply to each separate occurrence as specified above.

This endorsement is subject to all exclusions, definitions, conditions and other terms of the policy to which it is attached.

_____

INSURED'S SIGNATURE

000040

PLEASE HAVE THIS ENDORSEMENT
SIGNED BY THE INSURED, AND
RETURN PROMPTLY

_____

DATED

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
| NAMED | COUNTERSIGNED: |
| INSURED: COUNTY OF MCHENRY, IL | |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY

## EXCLUSION - FAILURE TO SUPPLY

It is agreed that Exclusion R. is deleted in its entirety and replaced with the following:

R.     To any liability arising out of the failure to adequately supply electricity, gas, oil or water. This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by the Insured to procure, produce, process or transmit water.

000041

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY - CLAIMS-MADE COVERAGE FORM

This endorsement modifies insurance provided under the following:

### BRIDGE ENDORSEMENT

It is agreed that with respect to endorsements made a part of the policy the following is made a part of definitions:

"We", "Us", and "Our" means the company providing this insurance.

"You", "Your", "Yourself" means the named insured indicated on the Declaration.

It is further agreed that any reference to "Who is an insured (Section II)" is amended to read "Insured" (Definitions).

000042

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #: A

| | |
|---|---|
| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
SCHOOL LIABILITY POLICY
EXCESS SCHOOL LIABILITY POLICY

## BLANKET ADDITIONAL INSURED ENDORSEMENT

The Who is an Insured section of this policy is amended to include any person or organization the Insured is contractually obligated to include as an Additional Insured, and for which a Certificate of Insurance has been issued evidencing such status and which is on file with the Company, with respect to bodily injury, property damage and personal injury arising out of the Named Insured's operations or premises owned by or rented to the Named Insured. The insurance provided to the Additional Insured does not apply to any liability occurring after those operations or use of premises has ceased.

The inclusion of more than one Insured under this policy shall not operate to impair the rights of one Insured against another Insured and the coverage's afforded by this policy shall apply as though separate policies had been issued to each Insured. The inclusion of more than one Insured shall not, however, operate to increase the limit of the Company's liability.

Any other insurance carried by a Certificate Holder which may be applicable shall be deemed excess and the Insured's insurance primary notwithstanding any conflicting provisions in the Insured's policy to the contrary.

A Certificate Holder shall not, by reason of their inclusion under this policy, incur liability for payment of premium for this policy.

In the event of reduction in coverage or cancellation of this insurance, the Company agrees to mail thirty (30) days, ten (10) days for non-payment of premium, advance notice of such reduction or cancellation to each entity added as per Certificates on file with the Company which specify that a written contract requiring that the Certificate Holder be an Additional Insured.

All other terms, conditions, and exclusions remain unchanged.            **000043**

# INSURANCE COMPANY OF THE WEST

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #: B

| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
|---|---|
| | COUNTERSIGNED: |
| NAMED INSURED: COUNTY OF MCHENRY, IL | |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
SCHOOL LIABILITY POLICY
EXCESS SCHOOL LIABILITY POLICY

## UNINTENTIONAL ERRORS & OMISSIONS

It is agreed that failure of the Named Insured to disclose all hazards existing on the effective date of this policy shall not prejudice the Insured with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

000044

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #: C

| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
|---|---|
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
SCHOOL LIABILITY POLICY
EXCESS SCHOOL LIABILITY POLICY

## KNOWLEDGE OF OCCURRENCE

It is agreed that knowledge of an occurrence, accident, injury, claim, suit or loss by the Insured's agent, servant or employee shall not, in itself, constitute knowledge by the Named Insured, unless and until the Insurance Manager has knowledge thereof.

000045

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #: E

| | |
|---|---|
| POLICY #:   XPL 1495544 00 | EFFECTIVE DATE:   12-01-98 |
| NAMED | COUNTERSIGNED: |
| INSURED:  COUNTY OF MCHENRY, IL | |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT TO MEDICAL EXCLUSION "K"

AS RESPECTS FORM EPEDOL (05/91), SECTION IV., EXCLUSION "K" IS HEREBY AMENDED TO READ AS FOLLOWS:

K.      TO ANY LIABILITY ARISING OUT OF THE:

1.    OWNERSHIP, MAINTENANCE OR OPERATION OF A HOSPITAL, NURSING HOME OR MEDICAL CLINIC;

2.    MEDICAL, SURGICAL OR DENTAL ACTIVITIES OF ANY PHYSICIAN, SURGEON OR DENTIST.

THIS EXCLUSION DOES NOT APPLY TO ANY LIABILITY ARISING OUT OF THE ACTIVITIES OF ANY EMPLOYEE WHO IS A LICENSED EMERGENCY MEDICAL TECHNICIAN OR PARAMEDIC IN THE SCOPE OF DUTIES AS SUCH:

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN THE SAME.

000046

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| POLICY #: | EFFECTIVE DATE: |
| NAMED | COUNTERSIGNED: |
| INSURED: | |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY

## DELETION OF EXCLUSION "N" AND EXCLUSION "O"

*Employment Practices*

It is agreed that under Section II. - Exclusions, Exclusion "N" and Exclusion "O" are hereby deleted in their entirety.

All other terms and conditions of this policy shall remain unchanged.

000047

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #:  XPL 1495544 00 | EFFECTIVE DATE:   12-01-98 |
| NAMED | COUNTERSIGNED: |
| INSURED:  COUNTY OF MCHENRY, IL | |

This endorsement modifies insurance provided under the following:

EXCESS PUBLIC ENTITY LIABILITY POLICY

## AMENDMENT OF COVERAGE C
## EMPLOYMENT PRACTICES LIABILITY

As respects form EPEDOL (05-91), Section I. A., Insuring Agreement, it is agreed that **Employment Practices Liability** is added to Coverage C - Public Entity Errors & Omissions and is subject to a separate retention of $ _____ per occurrence.

As respects form EPEDOL (05-91), Section VI., Definitions, Definition N., it is agreed that Public Entity Errors and Omissions is amended to read as follows:

Public Officials Errors and Omissions means any actual or alleged misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance or nonfeasance by the Insured, individually or collectively, in the discharge of their duties for the Named Insured, or any matter claimed against them solely by reason of their being or having been an Insured and includes Employment Practices Liability.

As respects Section VI., Definitions, it is agreed that the following are made a part of the policy:

S.  Employment Practices Liability means discrimination, sexual harassment and or wrongful termination.

The following definitions apply only with respect to Employment Practices Liability under Coverage C of the Insuring Agreement:

T.  Discrimination means action or inaction with respect to any present or former employee or applicant for employment with respect to his or her compensation, terms conditions, rights, privileges or opportunities because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable federal, state or local statute or ordinance.

U.  Employee means an individual whose labor or service is engaged by and directed by an Insured. This includes part-time, seasonal and temporary employees as well as any individual employed in a supervisory, managerial or confidential position.  Employee does not include any independent contractor, volunteer or servant of any Insured.

V.  Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance or creates an intimidating, hostile or offensive work environment.  **850000**

W.  Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.  Wrongful

termination shall not include damages determined to be owing under an express contract of employment or an express obligation to make payments in the event of the termination of employment.

As respects Employment practices liability, only, Definition Q., is deleted and replaced with the following:

Q. Ultimate Net Loss means damages, judgments, settlements and statutory attorney fees.

However, ultimate net loss shall not include civil or criminal fines or penalties imposed by law, non-monetary relief, the multiplied portion of multiplied damages, punitive or exemplary damages, or matters which may be deemed uninsurable under the law or public policy. Ultimate net loss also shall not include payment of insurance plan benefits claimed by or on behalf of retired employees, or that a claimant would have been entitled to as an employee had the Insured provided the claimant with a continuation of insurance.

Ultimate net loss also shall not include amounts awarded pursuant to a labor or grievance arbitration pursuant to a collective bargaining agreement. Ultimate net loss shall not include sums paid pursuant to any judgment or agreement, whether injunctive or otherwise to undertake actions to correct past discriminatory or unlawful conduct or to establish practices or procedures designed to eliminate or prevent future discriminatory or other unlawful conduct or any non-monetary relief.

Ultimate net loss shall include damages, judgments, settlements and statutory attorney fees arising out of allegations of defamation, negligent infliction of emotional distress and invasion of privacy, if these allegations arise out of the facts or circumstances underlying a claim of discrimination, sexual harassment and/or wrongful termination.

The following exclusions apply only with respect to Employment practices liability under Coverage C of the Insuring Agreement:

X. To any liability arising out of a lockout, strike, picket line, replacement or other similar actions in connection with labor disputes or labor negotiations;

Y. To any liability arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto or any similar federal, state or local law;

Z. To any liability arising out of civil or criminal fines or penalties, non-monetary relief, punitive or exemplary damages including the multiplied portion of multiple damages, or matters which may be deemed uninsurable according to applicable law;

AA. To any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disable person;

BB. To any liability caused by an Insured who intentionally caused harm alleged to have arisen out of any act of discrimination or sexual harassment. However, defense will be provided until such time as such Insured is finally judicially determined to have intentionally caused the resulting harm.

Where it is determined that a claim covered by Employment practices liability has occurred no other coverage under this policy shall be applicable.

All other terms and conditions in this policy shall remain unchanged.

000049

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| POLICY #: | EFFECTIVE DATE: |
|---|---|
| NAMED | COUNTERSIGNED: |
| INSURED: | |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY

## TIME ELEMENT POLLUTION EXCLUSION

Section II., Exclusions, Exclusion F is deleted in its entirety and replaced with the following:

1. To any injury, damage or any other liability which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

2. To any loss, cost or expense arising out of any governmental direction or request that the Company, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3. To any loss, cost or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

4. The exclusions set forth in 1, 2, or 3 above do not apply if said discharge, dispersal, release or escape of pollutants meets all the following conditions:

   a) It was accidental and neither expected not intended by the Insured; and

   b) It was demonstrable as having commenced on a specific date during the term of this policy; and

   c) Its commencement became known to the Insured within seven (7) calendar days; and

   d) Its commencement was reported in writing to the Company within thirty (30) calendar days of becoming known to the Insured; and

   e) Reasonable effort was expended by the Insured to terminate the discharge, dispersal, release or escape of pollutants as soon as conditions permitted.

5. Nothing contained in this endorsement shall operate to provide any coverage with respect to:

   a) Any site or location principally used by the Insured, or by others on the Insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

   b) Any fines or penalties;

   c) Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion c. shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority; **000050**

   d) Acid rain;

   e) Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the Insured owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants; or

f)     Water pollution caused by oil or its derivatives.

This exclusion does not apply:

1.     To any injury, damage or any other liability caused by heat, smoke or fumes from a hostile fire;

2.     To any injury, damage or any other liability arising out of police use of mace, oleoresin capsicum (o.c.), pepper spray or tear gas;

3.     To any injury, damage or any other liability arising out of fire fighting or rescue unit operations when those operations are conducted away from the Insured's premises;

4.     To any injury, damage or any other liability arising out of collision, upset or overturn of an automobile or mobile equipment; or

5.     To any injury, damage or any other liability arising out of the application of herbicides or pesticides by the Insured if the application of said herbicides or pesticides meets all standards of any statute, ordinance, regulation or license requirement of any Federal, State or Local Government which apply to those operations.

It is further agreed this exclusion does not apply:

1.     To any injury, damage or any other liability arising out of explosion, lightning, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood or earthquake if said discharge, dispersal, release or escape of pollutants meets all of the following conditions:

   a.     Its commencement was recorded and reported to the Risk Manager or designated Department Head within a seventy-two (72) hour period; and

   b.     Regardless of whether any claim or suit against the Insured has been made, the Insured shall give written notice to the Company within thirty (30) calendar days of the Risk Manager's or designated Department Head's recorded entry of such discharge, dispersal, release or escape of pollutants which may result in liability for bodily injury, property damage, personal injury or public entity errors and omission due to an occurrence.

All other terms, conditions, and exclusions remain unchanged.

000051

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| POLICY #: XPL 1495544 00 | EFFECTIVE DATE: 12-01-98 |
|---|---|
| NAMED INSURED: COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY - CLAIMS-MADE COVERAGE FORM

## TOTAL POLLUTION EXCLUSION
## EXCEPTION FOR DESIGNATED PRODUCTS

### SCHEDULE

DESIGNATED PRODUCTS: Potable Water

It is agreed that Exclusion F does not apply to products designated in the Schedule above, provided that:

1. If the Insured treats, neutralizes or otherwise purifies the designated products with chemicals during its normal operations, said products shall have been, are being or will be treated, neutralized or otherwise purified in accordance with applicable federal, state and local laws, regulations or permits applicable to the operations of the public entity; and/or

2. If the Insured sells or otherwise distributes the designated products, said products shall have been or are being sold or otherwise distributed in accordance with applicable federal, state and local laws, regulations or permits authorizing such sale or distribution.

For the purposes of this endorsement, products shall mean any goods, including water in any of its designated forms, that are sold, distributed, delivered or disposed of by the Insured; others trading under the Insured's name(s); or person or organization whose business the Insured has acquired.

All other terms and conditions of the policy remain the same.

000052

# INSURANCE COMPANY OF THE WEST

## NOTICE TO POLICYHOLDER

### ADVISORY NOTICE OF TOTAL POLLUTION EXCLUSION(S)

It is agreed that the referenced policy, including any endorsement thereto, contains a Pollution Exclusions(s) which excludes coverage and/or the duty to defend any and all direct or indirect pollution claims or suits except where provided under the Time Element Pollution Exclusion Endorsement attached to this policy.

It is further agreed that environmental impairment liability coverage and/or any other type of pollution coverage (other than that provided by the Time Element Pollution Exclusion Endorsement) is <u>not provided</u> by this policy of insurance. If you have any pollution exposures, you should purchase separate pollution and/or environmental impairment liability coverage. Please contact your agent or broker regarding appropriate insurance coverage for any known or potential pollution exposures.

### POLICYHOLDER ACKNOWLEDGMENT

I HAVE READ THIS NOTICE AND THE POLLUTION EXCLUSIONS(S) CONTAINED IN THE POLICY.

COUNTY OF MCHENRY, IL
POLICYHOLDER

XPL 1495544 00
POLICY NUMBER


AUTHORIZED SIGNATURE


TITLE


**000053**

# INSURANCE COMPANY OF THE WEST

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ENDORSEMENT #:

| | |
|---|---|
| POLICY #:  XPL 1495544 00 | EFFECTIVE DATE:  12-01-98 |
| NAMED<br>INSURED:  COUNTY OF MCHENRY, IL | COUNTERSIGNED: |

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY
EXCESS PUBLIC ENTITY LIABILITY POLICY - CLAIMS-MADE COVERAGE FORM

This endorsement modifies insurance provided under the following:

### CANCELLATION CLAUSE

It is agreed that in the event of cancellation for any reason other than non-payment if premium the Company will furnish 60 days written notice of such cancellation to the named insured.

It is further agreed that if cancellation of this policy should become necessary due to non-payment of premium, 10 days written notice to the named insured shall be deemed sufficient.

000054

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF McHENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04 C 2078 |
| v. | ) | |
| | ) | |
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Insurance Company of the West (ICW) issued an "Excess Public Entity Liability" insurance policy to the County of McHenry, covering the period of December 1, 1998 to December 1, 1999. In August 1999, Indeck Pleasant-Valley, Inc. sued the County for denying a special use permit to construct and operate an electrical generation facility, seeking declaratory and injunctive relief and $25 million in damages. ICW took the position that due to an exclusion in the policy, it did not have a duty to defend or indemnify the County regarding Indeck's claim for damages. Despite this, ICW ultimately agreed to pay Indeck $5 million, the maximum amount of coverage under the policy, to settle Indeck's damages claim.

The insurance policy that ICW issued to the County includes a provision which states:

N.    ARBITRATION

In the event that a dispute arises between the Insured and the Company under this agreement or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.



EXHIBIT
B

> The Company shall have the right, but not the duty, to determine when a claim or suit should be settled and may proceed to settle the claim or suit within its Limit of Liability. The insured and/or the company are entitled to require the other party to submit the dispute to arbitration.
>
> ...

Policy, ¶ N. ICW asked the County to submit to arbitration under the policy's arbitration provision on whether the policy excluded coverage for Indeck's claim and whether, accordingly, ICW was entitled to reimbursement for the amount it paid to settle the claim.

The County has filed suit seeking to enjoin ICW from prosecuting an arbitration proceeding, contending that the matters on which ICW seeks arbitration are outside the scope of the policy's arbitration provision. ICW has moved to dismiss the case, arguing that the question of whether the dispute is subject to arbitration is to be made by an arbitrator, and alternatively that the parties' disputes are, in fact, within the policy's arbitration provision. For the reasons stated below, the Court agrees with ICW on the latter question and therefore dismisses the County's claims.

### Discussion

1.      **Who decides whether the disputes are subject to arbitration**

The Federal Arbitration Act requires that doubts regarding whether a particular dispute falls within an agreement to arbitrate be "resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1982). But this presumption in favor of arbitration is reversed when the question is who – court or arbitrator – decides whether a particular dispute is arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In such instances, courts should not "assume that parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.*

Although the arbitration provision in the policy is quite expansive, it does not fulfill the "clear and unmistakable" standard set forth in *First Options*. Though the provision requires arbitration for all disputes "under this agreement," it includes no term suggesting that the arbitrator is supposed to decide which disputes are arbitrable. Because "arbitrability is for the courts to decide unless the parties stipulate otherwise," *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 647 (1986), the issue of arbitrability is, in this case, for this Court to decide.

In arguing that the threshold issue of arbitrability must itself be decided by an arbitrator, ICW relies on *Air Line Pilots Ass'n Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002), in which the court stated that "when an arbitration clause is so broadly worded that it encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the contracts scope and validity are for the arbitrators." But in *Air Line Pilots,* the arbitration provision conferred on the arbitrators determination of all issues concerning the interpretation and application of the agreement, a provision missing from the arbitration clause at issue in this case.

The County argues that the language of the agreement does not satisfy the requirement of *First Options* and thus leaves determination of arbitrability with the Court. This argument, however, runs headlong into the County's argument on whether its disputes with ICW are within the scope of the arbitration provision. In arguing that the provision does not cover all disputes under the insurance policy, the County contends that the provision's coverage of disputes "under this agreement" refers only to the arbitration agreement itself, not to the policy as a whole. *See* Resp. to Mot. to Dismiss at 4, 10. The Court rejects that argument, as discussed later in this decision. But were the County's argument correct, it would require submission to arbitration of

the question of whether the parties' disputes are within the scope of the arbitration provision.

**2.     Whether the disputes are subject to arbitration**

The County argues that the coverage and reimbursement disputes are outside of the scope of the arbitration provision. It argues that the provision's requirement of arbitration of disputes "under this agreement" does not cover all disputes under the insurance policy but rather refers only to the arbitration agreement itself. The County is correct that policy elsewhere uses the term "policy" – as opposed to the term "agreement" – to refer to the policy as a whole. But in the context of the arbitration provision, it is clear that the use of the term "under this agreement" was meant to cover disputes arising under any part of the insurance policy. No other meaning makes sense or accords with the rules governing interpretation of arbitration agreements. (As noted earlier, were the Court to accept the County's interpretation, it would do the County no good, as we would be forced to conclude that the threshold issue of arbitrability is to be decided by an arbitrator).

The Supreme Court has stated that "where the contract contains an arbitration clause, there is a presumption of arbitrability" and that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650. And "once it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). This Court has already concluded that the arbitration agreement is broad enough to encompass all disputes under the policy; since coverage and reimbursement disputes clearly arise under the policy, there is no reason to exclude those issues from arbitration.

The County argues that the dispute over ICW's right to reimbursement is not subject to arbitration, because the insurer has no right to reimbursement under either the policy or Illinois law. However, when deciding whether a particular dispute falls within an agreement to arbitrate, a court "is not to rule on the potential merits of the underlying claim." *AT & T*, 475 U.S. at 649. The County's argument asks this Court to do exactly that; the argument should be presented to the arbitrator.

### Conclusion

For the reasons stated above, the Court concludes that defendant's disputes with the plaintiff must be submitted to arbitration under the terms of the insurance policy issued by the defendant. Defendant's motion to dismiss [docket #6-1] is granted, and its motion to stay [# 6-2] is denied as moot. The plaintiff's action, which seeks a declaratory judgment that arbitration is not required and an injunction preventing arbitration, is dismissed. The Clerk is directed to enter judgment in favor of the defendant.

MATTHEW F. KENNELLY
United States District Judge

Date: October 25, 2004



**Wildman, Harrold, Allen & Dixon**
225 West Wacker Drive
Chicago, Illinois 60606-1229
312-201-2000
312-201-8053 fax
www.wildmanharrold.com

**Craig M. White**
312-201-2530
white@wildmanharrold.com

Wildman Harrold
*Attorneys and Counselors*

January 7, 2005

**VIA FAX #312/ 332-8451**
 **&  REGULAR MAIL**

Mr. James K. Horstman
Iwan, Cray, Huber, Horstman & VanAusdal, LLC
303 West Madison Street, Suite 2200
Chicago, Illinois  60606

|  |  |  |
|---|---|---|
| RE: | Policy No: | XPL 1495544 00 ("The Policy") |
|  | Policy Period: | 12-01-98 to 12-01-99 |
|  | Named Insured: | County of McHenry, IL ("The County") |
|  | Carrier: | Insurance Company of the West ("ICW") |
|  | ICW Claim No: | 110-99-07781 |
|  | ICW File No: | 0806006068 |
|  | Claim: | Indeck-Pleasant Valley, LLC, et al. v. County of McHenry, Case No. 99 MR176, Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois (the "Indeck Underlying Litigation") |
|  | Cases: | Insurance Company of the West v. County of McHenry, et al., No. 02 C 2291, United States District Court, Northern District of Illinois, *and appeal at* 02-3275, United States Court of Appeals, Seventh Circuit ("ICW v. County"); Insurance Company of the West v. County of McHenry, et al., No. 02 C 7387, United States District Court, Northern District of Illinois; County of McHenry v. Insurance Company of the West, Case No. 04 CV 2078, United States District Court, Northern District of Illinois ("County v. ICW") |

Dear Jim:

I cannot say we have encountered each other before, but I have heard that you are a fairly principled attorney. Accordingly, I write to put things on the table so that you and your client can accurately assess the future in this matter.



**EXHIBIT**

C



Mr. James K. Horstman
January 7, 2005
Page 2

We have been retained by The County, as co-counsel with Zukowski, Rogers, Flood & McArdle, in connection with its dispute with ICW. We have reviewed The County's, ICW's, and Indeck's correspondence, pleadings, and other documents, and write to address ICW's recent attempts to re-initiate arbitration.

It appears that ICW's demands for arbitration, and other coverage positions, are based on fundamental misinterpretations of The Policy, applicable insurance law, and the facts. Thus, The County rejects ICW's latest attempt to self-initiate an improper arbitration.

**The Policy**

ICW issued to The County a "Commercial Package Policy," which provided, among other things, "Excess Public Entity Liability Coverage." Although The Policy is labeled as an excess policy, there are no underlying policies. Instead, The Policy provides $5,000,000 of coverage in excess of The County's $250,000 self-insured retention.[1]

The Policy obligated ICW to "pay on behalf of the Insured" certain "ultimate net loss"[2] that The County became legally obligated to pay for damages.[3] Further, although the Policy does

---

[1]  *Policy*, Excess Public Entity Liability Declarations, Item 1.

[2]  "Ultimate net loss" is defined as "the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or by compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages and other collectible insurance." *Policy*, §VI.Q.

[3]  The Policy's Insuring Agreement provides:
   1.  INSURING AGREEMENT
      A.  The Company will pay on behalf of the Insured for the ultimate net loss in excess of the retention which the Insured shall become legally obligated to pay by reason of liability imposed by law or liability for personal injury or property damage of others assumed by contract, insofar as the Named Insured may legally do so, for damages because of:

|  |  |
|---|---|
| Coverage A | Personal Injury |
| Coverage B | Property Damage |
| Coverage C | Public Entity Errors and Omissions |

and caused by an occurrence to which this insurance applies during the policy period anywhere in the world.
* * *
Further, the Policy does not define "damages."



Mr. James K. Horstman
January 7, 2005
Page 3

not impose upon ICW a duty to defend, it obligates ICW to reimburse The County's defense costs.[4]

The Policy's arbitration clause provides:

> In the event that a dispute arises between the Insured and the Company under this agreement or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.

> The Company shall have the right, but not the duty, to determine when a claim or suit should be settled and may proceed to settle the claim or suit within its Limit of Liability. The Insured and/or the Company are entitled to require the other party to submit the dispute to arbitration.[5]

\* \* \*

### Factual Background

In 1999, Indeck and related entities sued The County alleging that The County inappropriately denied Indeck a permit. The County tendered the claim to ICW, but in a November 15, 1999 letter, ICW denied coverage. ICW wrongfully averred that The Policy did not provide coverage for Indeck's requests for declaratory and injunctive relief and that The Policy's exclusions precluded coverage for Indeck's request for damages.

A year and a half later, on March 29, 2002, ICW sued The County in federal court for a declaration that "ICW has no duty to defend with respect to the Indeck action" and that "ICW has no duty to indemnify with respect to the Indeck action." Importantly, ICW's suit asked the Court to interpret multiple provisions in The Policy, including the Insuring Agreement, the Defense and Settlement provisions, and the exclusions.[6]

---

[4]   *Policy*, § I.A; § II.A – C, ("DEFENSE AND SETTLEMENT"); §VII.F.2. The Policy obligates ICW to pay the "ultimate net loss. . . .for damages." The Policy does not expressly disavow ICW's obligation to pay defense costs. Further, it is generally accepted that a policy that requires a carrier's consent before the insured can incur defense costs obligates the carrier to reimburse those defense costs.

[5]   *Policy*, § VII.N.

[6]   *ICW v. County*, ¶¶ 15-16.

 Mr. James K. Horstman
January 7, 2005
Page 4

In June, 2002, The County moved to dismiss ICW's suit on the grounds that the court lacked subject-matter jurisdiction, specifically because ICW's duty to indemnify could not be determined until the underlying action had resolved. The County's motion discussed at length many of The Policy's provisions, most notably The Policy's "inverse-condemnation" exclusion. Like ICW, The County asked the court to interpret these provisions. Similarly, ICW's response brief, filed on July 11, 2002, asked the federal court to interpret and apply certain provisions in The Policy.

On August 6, 2002, the Court held that ICW's duties to defend and indemnify were not justiciable and dismissed ICW's suit. ICW appealed, and on October 11, 2002, filed its appellate brief asking the Seventh Circuit to reverse the District Court's order and remand the case to determine ICW's duties to defend and indemnify.

On October 15, 2002, after the Northern District dismissed ICW's action and after ICW appealed, but before the Seventh Circuit ruled, ICW filed a second coverage suit against The County. Save for allegations regarding The County's self-insured retention, this suit sought the same broad declarations regarding ICW's duties to defend and indemnify. In fact, ICW characterized this suit as a "re-filing" of the first action. This suit was also dismissed.

Despite ICW's having denied coverage and filed two suits, ICW requested continuous updates on the Indeck Underlying Litigation, at times threatening that The County's failure to provide updates would constitute a breach of The Policy. The County in good faith provided ICW with detailed and continuous updates.

Even as ICW disputed coverage, it appears that ICW and Indeck were engaged in clandestine settlement discussions. On November 21, 2002, without The County's input, ICW improperly settled a portion of Count III in the Indeck Underlying Litigation.[7] In ICW's November 21, 2002 letter to Indeck's counsel, ICW reserved its "rights to seek a judicial declaration that it owes the County of McHenry no coverage and to seek full reimbursement from the County of McHenry for the full amount of this settlement payment." ICW also noted its intention to seek reimbursement in the actual settlement agreement between it and Indeck.

ICW then moved to voluntarily dismiss the appeal on the grounds that the settlement mooted the appeal. The County opposed and sought sanctions. In May, 2003, the Seventh Circuit denied The County's request for sanctions.

---

[7] ICW placed its interests ahead of its insured when it settled only the monetary portion of Count III with the simultaneous intention to seek reimbursement from its insured. The County never agreed to this condition.



Mr. James K. Horstman
January 7, 2005
Page 5

## ICW Begins Raising Arbitration

Even though ICW denied coverage in 1999, sued twice and appealed once in 2002, and discussed settlement with The County and Indeck, it appears that neither ICW, The County, any Court, nor Indeck raised arbitration before December, 2002. ICW requested that the County "consent" to arbitration. Of course, after having been thrust into litigation, The County declined.

On December 12, 2002 (some seven months, two suits, a dismissal, and an appeal later) your letter to The County included ICW's first arbitration "demand." In it, you stated (emphasis added):

> Pursuant to the terms of ICW Policy No. XPL 1495544, ICW hereby demands that County of McHenry arbitrate the issue of whether ICW owes *any duties under this policy* with respect to the lawsuit encaptioned <u>Indeck v. County of McHenry</u>, 99MR 176. ICW anticipates that the arbitration *will moot any and all lawsuits* concerning these *and related coverage issues.*

Considering that ICW had twice sought relief in federal court and that the underlying litigation was still pending, The County in a December 17, 2002 letter questioned whether ICW had the right to demand arbitration and requested that ICW provide case law in support of its demand. The County also reserved its right to appoint an arbitrator. Your December 24, 2002 letter opined that ICW had not waived its right to arbitrate because the non-right-to-reimbursement issue was "a new one." Your letter provided no support for this "new issue" argument, only a veiled and remarkable threat that The County's decision to exercise its constitutional right to stay in court was bad faith.

On January 7, 2003, ICW moved to stay the appeal pending arbitration in the ICW v. County case. In its motion, ICW again stated that it "believes that the arbitration will moot the issues raised in this action." The County disputed ICW's right to demand arbitration but again clearly reserved its right to pick an arbitrator if it were determined that arbitration were appropriate.

On August 27, 2003, some eight months after its first arbitration "demand," ICW issued another arbitration demand and appointed C. David Sullivan as its arbitrator. In this letter, you stated (emphasis added):

> ICW hereby demands that County of McHenry arbitrate the issues of whether ICW *owed any duties under this policy* with respect to the lawsuit encaptioned <u>Indeck v. County of McHenry</u>, 99 MR 176 *and* whether County of McHenry is



Mr. James K. Horstman
January 7, 2005
Page 6

obligated to reimburse ICW for the amounts paid by ICW in settlement of the damages claims pled by Indeck in that action.

Again, ICW broadly characterized the scope of arbitration as involving "any duties under this policy." Further, the way in which this sentence is drafted suggests that ICW considered the issue of whether ICW owed "any duties under this policy" as separate from the issue of whether The County was obligated to reimburse the settlement amounts.

On September 22, 2003, within 30 days of ICW's demand, The County responded. It again objected to arbitration but reserved its right to appoint John Brechin as its arbitrator. Your September 23, 2003 letter wrongfully interpreted The County's rejection of arbitration as a refusal to arbitrate. That was not the case, as the refusal to arbitrate issues was quite separate from the reservation of the right to appoint an arbitrator. On October 7, The County responded again with a reservation of the right to appoint John Brechin. ICW ignored this reservation, appointed Paul Steinlage as its second arbitrator, and directed Mr. Di Liberto and Mr. Steinlage to appoint a third member of the improperly appointed panel. They appointed David Sullivan.

The County continued to object, but ICW and the improperly appointed panel moved forward. These actions, among others, forced The County to sue ICW in federal court seeking a determination that ICW had no right to seek arbitration.

Upon learning of the County v. ICW action, the ICW-appointed panel members stayed the proceedings. On October 24, 2004, the Northern District ruled that the parties must submit to arbitration. The opinion did not address the propriety of ICW's inappropriately appointed panel. As such, in a November 2, 2004 letter, The County noted that a new arbitration panel must be selected. ICW refused and in a November 17 letter threatened to push arbitration forward with its hand-selected panel.

With the appeal pending, ICW apparently insists on pushing its wrongful arbitration forward. In your December 20, 2004 letter to Mr. Di Liberto, you stated that The County has not moved to stay the District Court's judgment pending appeal and that there is no order precluding the arbitration from going forward. You stated that ICW wishes no further delay. Your December 24, 2004 letter directs the improperly appointed panel to re-initiate arbitration.

Finally, in a December 28, 2004 letter, the Seventh Circuit notified The County and ICW that a settlement conference has been scheduled for January 25, 2005, at 2:00 p.m.



Mr. James K. Horstman
January 7, 2005
Page 8

and/or

    (d)    The County will appoint its own panel of 3 arbitrators to have a contest with ICW's 3 arbitrators to see who can reach the fastest result so that the courts can be clogged up for years deciding which arbitration result to enforce.

    ii)    Alternatively, ICW and The County can simply agree (without prejudice to either) to make no moves toward arbitration until the appeal is resolved.

    iii)    Alternatively, ICW can agree to stop pressing for an arbitration by its 3 hand-chosen arbitrators, and the parties can start over with a civilized approach to arbitration in accord with the contract provision (without waiver, of course, of any of The County's positions on arbitrability).

Our preference is for (b)(ii) above because it involves the least expense, and there is no apparent reason for haste. However, our representation here is premised upon the fact that ICW has shown very little by way of cooperation in its dealings with The County. Accordingly, our instructions are to dance to whatever tune ICW decides to play. Please let us know your client's pleasure. Thank you.

Best regards,

CRAIG M.. WHITE

CMW/mh

cc:    John G. Di Liberto
        C. David Sullivan
        Paul N. Steinlage
        E. Regan Daniels Shepley