IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSURANCE COMPANY OF THE WEST, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 05 C 1711 |
| COUNTY OF McHENRY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Insurance Company of the West (ICW) filed a petition to compel arbitration under section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. It seeks an order compelling defendant McHenry County to arbitrate a dispute regarding whether an insurance policy that ICW issued to the County covered a lawsuit filed against the County referred to as the *Indeck* litigation. The policy contains a provision stating that

> [i]n the event that a dispute arises between the Insured and the Company under this agreement or concerning when a claim of suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and the decision of the arbitrator or arbitrators.
>
> The Company and the Insured may agree to use one arbitrator. If they fail to agree on the identity of one arbitrator, the dispute shall be referred to three arbitrators; one being chosen by the Insured, one being chosen by the Company, and the third being chosen by the two aforesaid arbitrators. ... Should either party thereto fail to appoint an arbitrator within one month after receipt of written notice, delivered by Certified Mail, from the other party requesting it to do so, the requesting party shall name both arbitrators and they shall proceed in all respects as above stipulated.

Pl. Ex. B, ¶ N.

The County filed a counterclaim in which it alleges that ICW breached the agreement to arbitrate. In Count 1 of the counterclaim, the County contends that the arbitration panel (which, as we will discuss, was selected entirely by ICW and its designees) was improperly chosen; in Counts 2 and 3, which are specifically identified as being alternatives to Count 1, the County seeks various types of relief regarding the arbitrators that ICW and its designees appointed.

The County has moved for entry of summary judgment in its favor on ICW's petition and on Count 1 of the County's counterclaim; ICW has moved for entry of summary judgment in its favor on Count 1 of the counterclaim. For the reasons stated below, the Court concludes that the County is entitled to summary judgment in Count 1 of its counterclaim but disagrees with the County regarding the relief it seeks in its motion.

## Background

The present case is the most recent of four lawsuits that this Court has handled regarding the dispute between ICW and the County. As the Court stated in a recent order denying ICW's motion to dismiss the County's counterclaim, the parties' dispute "seems to be well on its way to becoming a modern version of *Jarndyce v. Jarndyce,* the never-ending lawsuit portrayed in Charles Dickens' *Bleak House.*" Order of Oct. 31, 2005 at 1. A review of the prior proceedings is necessary to understand the present motions.

ICW issued a liability insurance policy to the County. In August 1999, the County was sued by a company, Indeck, that had been denied a special use permit to construct an electrical generation plant. The County tendered the claim to ICW, but ICW ultimately denied coverage, citing a policy exclusion.

In March 2002, ICW sued the County, seeking a declaration that the policy did not

2

provide coverage for the claim. The Court dismissed the case in August 2002 for lack of subject matter jurisdiction, finding that the policy imposed only a duty to indemnify, not a duty to defend the County, and that the duty to indemnify could not be determined as long as the underlying claim was unresolved. *Ins. Co. of the West v. County of McHenry*, No. 02 C 2291, 2002 WL 1803743 (N.D. Ill. Aug. 6, 2002). ICW appealed the dismissal of the case. This Court's decision ultimately was affirmed on appeal. *Ins. Co. of the West v. County of McHenry*, 328 F.3d 926 (7th Cir. 2003).

In September 2002, while its appeal was pending, ICW proposed to arbitrate the coverage issue, pursuant to the policy term requiring arbitration of disputes. The County declined to arbitrate.

In October 2002, while its appeal from the dismissal of its initial declaratory judgment action was still pending, ICW filed a second action, again seeking a declaratory judgment of non-coverage. It argued the dispute had become ripe because the County's legal fees in the Indeck case had swallowed up the County's self-insured retention. The Court disagreed and, in March 2003, dismissed the case. *Ins. Co. of the West v. County of McHenry*, No. 02 C 7387, Order of Mar. 21, 2003.

In the interim, in November 2002, ICW paid Indeck $5 million to settle Indeck's claims for damages against the County. ICW made a written demand to the County to arbitrate the dispute. The County declined, arguing it had no obligation to engage in arbitration. None of this had any bearing on the issue of the ripeness of the second suit filed by ICW, because the settlement was made after the suit was filed. (ICW had filed, in its then-pending second case, a motion to stay the case pending arbitration. When the Court dismissed the case for lack of

ripeness, we denied the motion to stay as moot, noting that "in any event, if ICW wants to arbitrate its dispute it should first demand arbitration rather than filing suit." *Id.*)

In late August 2003, about five months after dismissal of its second suit, ICW again demanded arbitration of the question whether ICW owed the County any obligation under the insurance policy regarding the *Indeck* suit. ICW's letter demanding arbitration appointed C. David Sullivan as an arbitrator and advised the County that under the policy's arbitration provision, the County had one month to state its preferences as to arbitrators. Pl. Ex. E.

The County responded to ICW's demand by letter dated September 22, 2003. In its letter, the County, via its legal counsel, reasserted its position that it had no obligation to arbitrate the dispute identified by ICW. After explaining the County's reasoning, the letter stated, "Accordingly, the County refuses to arbitrate. Were, however, the County required to name an arbitrator, it would name John Brechin." Pl. Ex. F.

In response, ICW's lawyer attempted to "spin" the County's response. In a letter dated September 23, 2003, ICW's lawyer stated that "[t]he meaning of [your] letter is not entirely clear. I take it that you are not merely objecting to the arbitration but are declining to appoint an arbitrator pursuant to the terms of the ICW policy. If I have misinterpreted your letter, please tell me so and identify the County's appointed arbitrator with contact information sufficient to allow the first arbitrator to reach him." ICW's lawyer closed by stating that "[i]f I do not hear back from you by October 7, 2003, with the name, address and phone number of the County's appointed arbitrator, ICW will promptly appoint the second arbitrator and submit the matter for arbitration pursuant to the terms of the policy." Pl. Ex. G.

In response, the County's lawyer wrote, on October 7, 2003, that it was reiterating its

4

position that the dispute was outside the scope of the agreement to arbitrate and asserted further objections against arbitration, stating that "[f]or these reasons ... the County rejects ICW's arbitration demand." The County's lawyer stated that her "prior identification of a potential choice of arbitrator is to ensure that [the County] has reserved all rights under the arbitration agreement ... in the unlikely event that arbitration is compelled by a court. It is not to be construed as a consent to arbitration of the issues as demanded by ICW." Pl. Ex. H.

ICW chose to construe the County's response as a declination to appoint an arbitrator. Sometime between October 7 and October 24, 2003, ICW appointed a second arbitrator, Paul Steinlage. On October 24, ICW wrote to the two arbitrators it had selected, Sullivan and Steinlage, and asked them to appoint a third arbitrator. Pl. Ex. I. It appears that Sullivan and Steinlage selected John DiLiberto as the third arbitrator. On February 26, 2004, DiLiberto, on behalf of the arbitration panel, wrote ICW's and the County's attorneys to set up an organizational meeting. Def. Ex. W.

In March 2004, the County filed suit seeking to enjoin ICW from proceeding with arbitration on the ground that the dispute was not subject to arbitration. The Court dismissed that case in October 2004, finding that the parties' disputes were in fact subject to arbitration under the policy's arbitration provision. *County of McHenry v. Ins. Co. of the West*, No. 04 C 2078, 2004 WL 2381878 (N.D. Ill. Oct. 25, 2004). The County appealed the ruling, but the Seventh Circuit recently affirmed this Court's decision. *County of McHenry v. Ins. Co. of the West*, 438 F.3d 814 (7th Cir. 2006).

In January 2005, after this Court had dismissed the County's lawsuit seeking to enjoin arbitration, the County's counsel sent correspondence to ICW and the members of the arbitration

panel threatening them with suit if they proceeded with the arbitration. This rather outrageous act on the part of the County led ICW to seek an order of contempt in the then-recently-dismissed case (Case No. 04 C 2078). The Court denied ICW's request, however, because its dismissal of the County's suit did not amount to an order for arbitration that could be the subject of a contempt finding. *County of McHenry v. Ins. Co. of the West*, Case No. 04 C 2078, Order of May 5, 2005. In the interim, in March 2005, ICW filed the present suit, specifically requesting an order requiring arbitration.

Though the parties' dispute has at all times been conducted through lawyers, lawsuits, and lawyerly-sounding correspondence, the dispute, "despite our earlier analogy to *Bleak House*, ... seems at times to be comparable less to a classic English novel than to a professional wrestling match." *See* Order of Oct. 31, 2005. It is time to put an end to the skirmishing and jockeying-for-position that has prevented resolution of the merits of the parties' dispute. Fortunately, because the facts are undisputed, the matter is appropriate for determination on motions for summary judgment.

In its motion for summary judgment, the County seeks a ruling rejecting ICW's position that the County failed to appoint an arbitrator, striking the three arbitrators appointed by ICW, and directing a new arbitrator selection process. ICW, in its motion, seeks summary judgment on Count 1 of the County's counterclaim, arguing that the claim is barred by the doctrine of claim preclusion, that the dispute over selection of the arbitrators should itself be arbitrated, and that the County in fact failed to appoint an arbitrator as provided in the insurance policy's arbitration provision.

6

## Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court first rejects ICW's claim preclusion argument. The Court specifically rejected that argument in a previous ruling in this case. We repeat that discussion here in full:

> In its complaint in the third suit, the County included factual allegations relating to the selection of the second and third arbitrators. *See* Case No. 04 C 2078, Cplt. ¶¶ 43-49. That is beside the point. The Court's dismissal of the third suit was based exclusively on our conclusion that the dispute was subject to arbitration; we made no judgment or findings regarding the arbitrator-selection issue. To the extent the County was making a separate claim about this point in the earlier case, the Court did not perceive it as such, and certainly made no ruling on it. Rather, we read the allegations about arbitrator selection as surplusage that were made to provide some color to the dispute over arbitrability. To the extent a separate claim was made (and we think none was), it was not adjudicated on the merits, and thus there is no ruling that can subject the present claim to claim preclusion. *See, e.g., River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 703 N.E.2d 883, 889 (1998) (doctrine of claim preclusion requires, among other things, a judgment on the merits and identity of causes of action.).

Order of Oct. 31, 2005 at 2.

The Court also reiterates its previous rejection of ICW's second argument, specifically, that the dispute over selection of the arbitrators is itself subject to arbitration. We likewise repeat that discussion in full:

> [ICW] argues that the County, as the party opposing arbitration of this threshold dispute, bears the burden of showing that the dispute is not subject to arbitration. But this Court rejected a nearly identical conclusion in the third case, noting that when the issue is who (court or arbitrator) decides whether a dispute is arbitrable – which is the case here – the presumption in favor of arbitration is reversed, and a showing must be made that the parties intended arbitration of the threshold

7

> dispute as well. *See County of McHenry v. Ins. Co. of the West*, [Case No. 04 C 2079,] 2004 WL 2381878, *1 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The same is true here. There is nothing in the arbitration agreement that so much as hints the parties intended to leave to the arbitrators a basic, threshold dispute about the manner of their selection.

*Id.*

The Court turns, therefore, to the nub of the parties' dispute: whether the manner in which the second and third arbitrators were selected comported with the insurance policy's arbitration provision. The answer is simple: it did not. The County did not "fail to appoint an arbitrator" within the meaning of the insurance policy's arbitration provision. Indeed, the County specifically named an arbitrator, John Brechin, in timely fashion. The County made clear – perhaps too clear, in retrospect – that it objected to arbitration and was not going to participate in the arbitration itself. But the County was not required to agree to arbitration in order to choose an arbitrator.

In short, there is no question that the County designated an arbitrator as the insurance policy required. ICW seems to take the position that the County did not make the designation in the appropriate way. But there were no "magic words" that the County was required to use; its statement that "[w]ere, however, the County required to name an arbitrator, it would name John Brechin" was sufficient. By this statement, the County made clear that it was not participating in the arbitration but that it was nonetheless choosing an arbitrator. The statement was not contingent in any way that is material to the present motions; because the County *was* "required to name an arbitrator," its statement designating Brechin comported with its obligations under the insurance policy's arbitration provision.

Because the County did what it was required to do, ICW was not entitled to ignore the

8

County's designation of Brechin and focus, as it did, exclusively on the County's refusal to participate in the arbitration process. This case is nothing like the ones on which ICW relies, in which a party entirely failed to designate an arbitrator by a contractual deadline. *See, e.g., Universal Reins. Corp. v. Allstate Ins. Co.*, 16 F.3d 125, 126-27 (7th Cir. 1994); *Continental Cas. Co. v. Hartford Steam Boiler Inspection and Ins. Co.*, No. 03 C 1441, 2004 WL 725469 (N.D. Ill. Mar. 30, 2004). The County's failure to respond to ICW's request for contact information for Brechin is of no consequence; no such requirement existed in the policy, and ICW offers no evidence from which a reasonable fact finder could conclude that this impeded ICW in any way, shape, or form from proceeding with the arbitration. In sum, the Court concludes that the County met its obligation under the insurance policy's arbitration provision to designate an arbitrator; there is no genuine issue of fact on that point.

Accordingly, ICW breached the contract by ignoring the County's designation of an arbitrator, making its own designation of the second arbitrator, and directing the two arbitrators it had selected to choose a third. This, however, does not suggest – as the County seems to contend, without support – that Sullivan, the first arbitrator designated by ICW, also must be disqualified. Rather, the appropriate relief under Count 1 of the counterclaim is the primary request the County itself made at the end of Count 1: a declaration that "ICW's appointment of Paul Steinlage and the selection of John DiLiberto were in breach of the Policy's terms; ... John Brechin was duly nominated by the County to serve as an arbitrator in any dispute regarding coverage for the Indeck Claim; and John Brechin and C. David Sullivan must select a new third member of the arbitration panel." Counterclaim, p. 14.

In short, the Court concludes that the appropriate relief on Count 1 of the County's

9

counterclaim is to return matters to where they stood before ICW's breach. ICW designated Sullivan as its arbitrator, and the County designated Brechin as its arbitrator, so Sullivan and Brechin should choose the third arbitrator, as provided in the insurance policy's arbitration provision.

Proceeding with the actual conduct of the arbitration, however, is premature for the moment, at least until the Court can make a final ruling on ICW's petition for arbitration. The County's motion for summary judgment in its favor on ICW's petition is without merit and must be denied, as there is no basis on the present record to conclude that ICW is not entitled to arbitration of the parties' dispute.

The Court intends to proceed promptly to decide any remaining disputed issues on ICW's petition for arbitration so that an appropriate order can be made. If the order is one requiring arbitration, then the arbitration will proceed before an arbitration panel consisting of arbitrators Sullivan and Brechin, as well as a third arbitrator selected by them. Those arbitrators' selection of the third arbitrator appropriately can and should await a ruling by the Court on ICW's petition for arbitration.

### Conclusion

For the reasons stated above, the Court denies plaintiff's motion for partial summary judgment [docket no. 47] and grants in part and denies in part defendant's motion for partial summary judgment [docket no. 44]. Summary judgment is granted in favor of defendant on Count 1 of its counterclaim.

Date: May 16, 2006

_____
MATTHEW F. KENNELLY
United States District Judge